OBMKCOL1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                    24 CR 00367 (LJL)

HECTOR COLON,

                                 Trial

         Defendant.

------------------------------x

                                 New York, N.Y.
                                 November 22, 2024
                                 9:00 a.m.

Before:

                   HON. LEWIS J. LIMAN,

                                 District Judge
                                -And A Jury-

                     APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
JACOB FIDDELMAN
JANE KIM
CATHERINE E. GHOSH
    Assistant United States Attorneys

THOMAS AMBROSIO, ESQ.
    Attorney for Defendant
BY:  THOMAS AMBROSIO

Also Present:

Jayda Foote, USAO Paralegal
Shirel Garzon, USAO Paralegal
Preston Gover, Defense Paralegal

OBMKCOL1

1           (Trial resumed; in open court; jury not present)

2           THE COURT:  Mr. Ambrosio, are you still reading the

3  proposed supplemental charge?

4           MR. AMBROSIO:  I just finished it, Judge.

5           THE COURT:  All right.

6           I want to thank the parties for their letters of last

7  night.  I've distributed a proposed supplemental charge.  Let

8  me tell you what I've done and then what my thoughts are, and

9  then I'll invite views.

10          I adopted points 1 and 2 of the government's

11  supplemental charge as Mr. Ambrosio described them in his

12  letter to me, with one exception, which is that, as

13  Mr. Ambrosio suggested, I substituted the word "admitted" for

14  the word "advanced" with respect to what it is that the jury

15  should consider in terms of evidence in the case.

16          What Mr. Ambrosio characterized as point 3 was the

17  language that the government had proposed which would invite

18  the jury to send me a note if there was a juror who was failing

19  to follow my instructions.  For reasons that I will explain, I

20  generally agreed with Mr. Ambrosio's views that it was

21  premature, at this point, to extend such an introduction.

22          I added to my proposed charge some language that

23  softly is intended to suggest that if the jury had a question

24  about whether a juror was not following my instructions, they

25  could send me a note.  It's a very, very, very soft suggestion.

OBMKCOL1

1    The language is:  "If these instructions should fail to address

2    your concerns."  That doesn't purport to characterize their

3    concerns as to whether they pertain to a juror who's not

4    following my instructions or pertain to something different.

5        I should give you the reason why I am not adopting the

6    government's proposal, at least at this stage.

7        I've reviewed the *Avenatti* case, from which the

8    Government drew its proposed language.  In that case, the note

9    from the jury went much further, in suggesting that there was a

10   juror who was not following the evidence.  In this case, the

11   note, as I read it, is ambiguous, and I think it's too early to

12   extend an invitation to the jury that is any more explicit than

13   what I've drafted.

14       There are all kinds of ways in which one can read the

15   note that we got from the jury.  One way one could read it is

16   that there is one or more jurors who are motivated by bias and

17   not following my instructions.  It's conceivable that that's

18   what's happening.

19       It is also conceivable that what's happening is that

20   there is a juror who, in the view of the majority of the

21   jurors, is not convinced by the evidence, and that the majority

22   of the jurors believe that that juror is motivated by some form

23   of bias, but that's the view of the majority of the jurors; it

24   doesn't yet suggest that the one or more than one juror who

25   doesn't believe the evidence has that belief because of

OBMKCOL1

```
 1    impermissible bias or simply a view that the evidence doesn't
 2    establish the proposition that the majority of the jurors
 3    believes that it supports.
 4            With that extended explanation, does the government
 5    have any views with respect to my supplemental instruction?
 6            MR. FIDDELMAN:  We're fine with it.  We understand the
 7    Court's reasoning, and we defer to the Court's discretion here.
 8            We provided some case law at the front of our letter,
 9    not because we think we're there yet, but just to get everyone,
10    I guess, on the same page.
11            We agree that the note is ambiguous.  And we should
12    put on the record that the parties were discussing last night,
13    and again this morning, that the note doesn't tell us really
14    anything about which way any biases might be pointing, what
15    type of bias they might be referring to.  There are all sorts
16    of types of biases that could be impermissible, but they aren't
17    necessarily of any one type, and they also aren't necessarily,
18    as the Court said, in fact biases.  And particularly because,
19    at this stage, not enough has been identified, we tried to just
20    propose instructions rather than inquiries.
21            So we're fine with the Court's proposal.
22            THE COURT:  And, Mr. Fiddelman, I should say that
23    identifying those cases for me was extremely helpful, and I
24    spent some time last night reviewing the cases — including
25    Thomas, including Baker, including the progeny of those two
```

OBMKCOL1

1    cases — alerted to the sensitivity of the issue.

2              Anything from the defense on the proposed supplemental

3    charge?

4              MR. AMBROSIO:  Your Honor, I think your supplemental

5    charge is appropriate, and I take no exceptions to it.

6              THE COURT:  So, when we've got a full jury, we'll

7    bring them in, and I will deliver to them the supplemental

8    charge.

9              We've got copies of the supplemental charge for them

10   to follow along with, so we'll distribute those, and then they

11   will have those to bring back into the jury room.  And we'll

12   see what the day brings.

13             We'll see you all back here around 9:30.

14             (Recess)

15             THE COURT:  I should mention that when my deputy went

16   into the jury room just to make sure that all of the jurors

17   were there, one of the jurors asked him, "Can we ask the judge

18   questions?"  And his response to them was, "Through sending a

19   note out to the judge."

20             So, when I get to the point of the supplemental

21   charge, where I say, "If you have any additional questions or

22   concerns, you can always send me another note," I think I will

23   add language that's not in this script but that will say, you

24   know, "through your foreperson in the manner that I've

25   previously described."

OBMKCOL1

1          Let's bring the jury in.

2          (Jury present)

3          THE COURT:  Be seated.

4          Good morning, members of the jury.  I hope you all had

5    a pleasant evening.

6          My law clerk will now distribute to you a supplemental

7    charge that we've prepared.

8          (Pause)

9          THE COURT:  I have received your note, which reads as

10   follows:  "Can we have a moment to discuss more about what

11   reasonable doubt should be from the judge?  We are having a lot

12   of discord.  Some are more driven by bias and don't believe

13   some items."

14         At the beginning of this case, you each took an oath

15   to well and truly try this issue and give a true verdict

16   according to the law and the evidence.

17         Pursuant to that oath, each of you has a duty to

18   deliberate.  That entails a duty to consult with one another,

19   to consider each other's views with an open mind, and to

20   discuss the evidence with the objective of reaching a just

21   verdict, if you can do so.

22         Under your oath as jurors, you are not to be swayed by

23   sympathy or emotion.  You should be guided solely by the

24   evidence presented during the trial and the law as I gave it to

25   you, without regard to the consequences of your decision.

OBMKCOL1

1          You have been chosen to try the issues of fact and

2     reach a verdict on the basis of the evidence or lack of

3     evidence.  Your verdict must be based solely upon the evidence

4     admitted at trial, or the lack of evidence, but I remind you

5     that the defendant has no burden to present any evidence.  As

6     I've told you many times, the burden of proof lies solely with

7     the government.

8          It would be improper for you to consider, in reaching

9     your decision as to whether the government has sustained its

10    burden of proof, any personal feelings you may have about the

11    defendant's race, religion, national origin, sex, age, or

12    political views.  Similarly, it would be improper for you to

13    consider any personal feelings you may have about the race,

14    religion, national origin, sex, age, or political views of any

15    witness, or anyone else involved in the case.

16         Do not allow yourself to be influenced by personal

17    likes or dislikes, sympathy, prejudice, fear, stereotypes,

18    public opinion, or biases, including unconscious biases.

19    Unconscious biases are stereotypes, attitudes, or preferences

20    that people may consciously reject but may be expressed without

21    conscious awareness, control, or intention.  Like conscious

22    bias, unconscious bias can affect how we evaluate information

23    and make decisions.

24         Both the defendant and the government are entitled to

25    a trial free from prejudice, and our judicial system cannot

OBMKCOL1

work unless you reach your verdict through a fair and impartial consideration of the evidence.  To repeat, your verdict must be based exclusively upon the evidence or lack of evidence in this case.

You've asked me about reasonable doubt.  A reasonable doubt is a doubt based in reason and arising out of the evidence in the case or the lack of evidence.  It is a doubt that a reasonable person has after carefully weighing all of the evidence in the case.  Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, and your common sense.  Reasonable doubt is not whim or speculation.  It is not an excuse to avoid an unpleasant duty. Nor is it sympathy for the defendant or any party.  A doubt based on any of the impermissible considerations I've just outlined for you is not a reasonable doubt.

Similarly, a guilty verdict cannot be based on any of these impermissible considerations.

"Beyond a reasonable doubt" does not mean mathematical certainty or proof beyond all possible doubt.  Proof beyond a reasonable doubt does not mean proof beyond all possible doubt. It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that by its very nature cannot be proven with mathematical certainty.

The government's burden is to establish guilt beyond a reasonable doubt, not all possible doubt.  The law in a

OBMKCOL1

criminal case is that it is sufficient if the guilt of the

defendant is established beyond a reasonable doubt, not beyond

all possible doubt.  Therefore, if after a fair and impartial

consideration of all the evidence, you can candidly and

honestly say that you do have an abiding belief of the

defendant's guilt, such a belief as a prudent person would be

willing to act upon in important matters in the personal

affairs of his or her own life, then you have no reasonable

doubt, and, under such circumstances, it is your duty to

convict the defendant of the particular crime in question.

On the other hand, if, after a fair and impartial

consideration of all of the evidence, you can candidly and

honestly say that you are not satisfied with the defendant's

guilt as to any charge, that you do not have an abiding belief

of his guilt as to that charge — in other words, if you have

such a doubt as would reasonably cause a prudent person to

hesitate in acting in matters of importance in his or her own

affairs — then you have a reasonable doubt, and, in that

circumstance, it is your duty to acquit the defendant of that

charge.

Now, I say this not because I think it is necessary,

but I remind you to be polite and respectful to each other, as

I'm sure you will be in the course of your deliberations, so

that each juror may have his or her position made clear to all

the others.  I remind you once again that your oath is to

OBMKCOL1

1  decide without fear or favor and to decide the issues based

2  solely on the evidence and on my instructions on the law.

3          I remind you that your verdict must be unanimous.

4          Further, you are reminded that if at any time you are

5  not in agreement, you are not to reveal the positions of the

6  jurors, including a split of the vote, to anyone, including to

7  me, at any time during your deliberations.

8          With that, I will ask you to return to the jury room

9  to continue your deliberations.

10          I'm going to give you copies of the instructions I've

11  just read to you and of the instructions I gave to you

12  yesterday.  If these instructions fail to address your

13  concerns, or if at any point in your deliberations you have any

14  additional questions or concerns, you can always send me

15  another note through your foreperson, in the manner that I have

16  previously described to you.

17          So, you're now to return to the jury room to continue

18  your deliberations.  Thank you.

19          (Jury not present)

20          THE COURT:  Okay.  Everybody, stay nearby.  We'll see

21  what the day brings.

22          (Recess pending verdict)

23          THE COURT:  All right.  We've got another note from

24  the jury.  My deputy has marked it as Court Exhibit No. 7.

25  It's timestamped 12:05 p.m.  It was received by us at 12:12.

OBMKCOL1

It reads as follows:  "One of the jurors has researched the lawyers online, and it has been brought to our attention.  What do we do next?"

If you all want to inspect the note, you're welcome to.  I will tell you my initial views are that I should send a note back to the jury indicating that I would like to speak to that juror, and that I need to do an interview of the juror, I presume with counsel present, to understand what it is that the juror researched.  At a minimum, I think I would need to do that, and then perhaps get some sense as to what's been shared with the remainder of the jury.

But does the government have a view right now, or does the government want to spend some time thinking about it?  What's your preference, Mr. Fiddelman?

MR. FIDDELMAN:  We'd ask for perhaps a five- or ten-minute recess just to think and consult, but sort of our initial reaction is that what your Honor described sounds right but we would appreciate a little bit of time.

THE COURT:  That's fine with me.

Mr. Ambrosio?

MR. AMBROSIO:  I agree with what Mr. Fiddelman just said.  I agree that your Honor's suggestion might be the appropriate way to go, at a minimum.  I would like a little time, too, to see if I could do some research on that, as well.

THE COURT:  Do either of you have a view as to the

OBMKCOL1

1  form in which I would request the interview?

2          One thing that I could do is prepare a note to send

3  back, saying, in essence, I would like to speak to the juror in

4  question, and ask that juror to come into the courtroom.  That

5  way, it's all in writing.

6          MR. FIDDELMAN:  I think that makes sense, your Honor.

7  To bring the entire jury into the courtroom to say that, and

8  send them all back, and then one come back out, seems an

9  unnecessary step.

10         THE COURT:  Mr. Ambrosio?

11         MR. AMBROSIO:  I agree with that, your Honor.

12         THE COURT:  So, we'll prepare that note.  I'm not

13 going to do anything, obviously, until you all have time to

14 think about next steps.

15         Let's try to be back here at 12:40, which is the ten

16 minutes.  If it turns out you need a couple of extra minutes,

17 then that's also fine with me.

18         MR. FIDDELMAN:  Thank you.

19         (Recess)

20         THE COURT:  Mr. Fiddelman?

21         MR. FIDDELMAN:  Thank you for those few minutes, your

22 Honor.

23         In short, I think the parties are in agreement that

24 your Honor's proposal is the way to go.

25         As an initial step, I think everyone needs to know a

OBMKCOL1

1  little bit more because it could be something innocuous, where
2  the juror might confirm, "I did that, I'm sorry, I shouldn't
3  have done it but I'm going to put it out of my mind and it will
4  not affect anything," in which case it's possible all parties
5  would be prepared for the jury to continue; it could be
6  something more problematic.  And, in all events, we need to
7  know not just what the juror researched but what subset of that
8  information was shared with the rest of the jury.  And you
9  could see certain highly problematic results here, and I don't
10 mean to hypothesize, but, for example, if one of the jurors
11 researched me or Ms. Ghosh, they could have found press
12 releases about the 70-defendant takedown in this case, which
13 could have mentioned the number of defendants who have pleaded
14 guilty, and then if any of that information has been learned by
15 a juror, we have a more serious problem.
16        So, we just need to know more.  And, obviously, I'm
17 sure the Court is quite attuned to this, but we think that sort
18 of as a first step, it should just be information-gathering and
19 not any necessarily follow-up questions about whether it has
20 affected the jurors' deliberations or how, and we'd ask for an
21 opportunity to chat with your Honor once we learn more facts,
22 before next steps are formulated.
23        THE COURT:  I agree with all of that.
24        Mr. Ambrosio, I'm going to turn to you in just a
25 moment -- well, let me ask you right now, Mr. Ambrosio:  I take

OBMKCOL1

1    it you agree that I should interview the juror in question?

2              MR. AMBROSIO:  Yes, I do, your Honor.

3              THE COURT:  Okay.

4              I would do that in the robing room — I think it's more

5    informal — unless the parties wanted me to do it elsewhere.

6              Counsel will be present, so I think it would be

7    probably less imposing on the juror if it's only one lawyer for

8    the government, but if the government feels it necessary for

9    all four people at counsel table to be there, I'm not going to

10   impose limits.

11             Mr. Ambrosio, you'll be there.  I don't know whether

12   you want your client to be there?

13             MR. AMBROSIO:  No, Judge.  I'd prefer to be alone.

14             THE COURT:  Okay.

15             And, Mr. Fiddelman, do you need everybody at counsel

16   table?

17             MR. FIDDELMAN:  Just a moment, your Honor.

18             (Pause)

19             MR. FIDDELMAN:  I think we'd ask that the three AUSAs,

20   the three counsel, attend.  With due respect to Ms. Garzon, I

21   think she can skip that part.

22             THE COURT:  I did say that while I prefer one, I would

23   not limit the government, so that will be fine.

24             On the note that I send, because I do think I should

25   send a note back there, which my deputy will essentially read

OBMKCOL1

| | |
|---|---|
| 1 | from when he goes out and pulls the juror, we haven't typed it |
| 2 | up yet, we didn't really have time, and I don't think I need to |
| 3 | spend the time typing it up unless somebody wants me to -- we |
| 4 | may have another note.  It looks like the court security |
| 5 | officer has an envelope. |
| 6 | Let's see what that is before I speak more. |
| 7 | (Pause) |
| 8 | THE COURT:  It's marked as Court Exhibit No. 8, |
| 9 | timestamped 12:41, received at 12:42. |
| 10 | It reads:  "Can we get the transcript from Hector's |
| 11 | testimony when he was questioned about Harry providing bribes? |
| 12 | Can we get the transcript from Harry's testimony about Hector's |
| 13 | demands?" |
| 14 | That may be a little bit more straightforward.  The |
| 15 | parties will confer about the relevant portions of the |
| 16 | transcript. |
| 17 | With respect to Note No. 7, what I propose to write to |
| 18 | the jury is along the lines of:  "The Court has been informed |
| 19 | that one of the jurors may have researched the lawyers in the |
| 20 | case.  The Court would like to speak to that juror.  The jurors |
| 21 | should stop the deliberations until the juror returns and all |
| 22 | jurors are present." |
| 23 | Any objection to that, Mr. Fiddelman? |
| 24 | MR. FIDDELMAN:  No, your Honor. |
| 25 | THE COURT:  Mr. Ambrosio? |

OBMKCOL1

```
 1            MR. AMBROSIO:  No, your Honor.

 2            THE COURT:  Let me write it out.

 3            (Pause)

 4            THE COURT:  My deputy actually is going to try to type

 5   it up.

 6            While he's doing that, I would appreciate thoughts

 7   that, first, the government has and then Mr. Ambrosio has about

 8   the questioning.  I would think it's going to be pretty

 9   straightforward to just ask the juror and question what it is

10   that the juror looked at, when the juror looked at it, what the

11   juror remembers seeing, and then what the juror has mentioned

12   to the other jurors about what the juror researched.

13            Anything more, Mr. Fiddelman?

14            MR. FIDDELMAN:  No.  That sounds right to us, your

15   Honor.  And there may be more follow-up questions about whether

16   the juror can put things out of his or her mind.  And before we

17   get there, we can all reconvene.

18            THE COURT:  What I would do is, after I'm done with

19   the questions, I would then ask the juror to step outside of

20   the robing room, and I'll talk to the parties about follow-up

21   questions.

22            Mr. Ambrosio?

23            MR. AMBROSIO:  Yes, Judge, I agree.  I think your

24   approach is the proper approach for this juror questioning.

25            THE COURT:  Okay.
```

OBMKCOL1

1          I don't think I need to stay on the bench while my

2    deputy is typing up my note.

3          You all should stay here and look at the note that he

4    is going to be reading from, which he'll mark as Court Exhibit

5    No. 9.  And then when the juror is ready, my deputy will tell

6    all of you to come into the robing room.  Once you're in the

7    robing room, we'll bring the juror in.

8          (Pause)

9          (In the robing room; juror present)

10          THE LAW CLERK:  Mr. Morris.

11          THE COURT:  Come in, come in.

12          JUROR:  First of all, I want to severely apologize.  I

13    feel horrible about this.

14          THE COURT:  No, no, have a seat.

15          So, tell me what you researched.

16          JUROR:  I wouldn't call it research.  You know, I am

17    in sales.  I spend my life on LinkedIn.  That's what I do when

18    I encounter people in a professional manner, I tend to look at

19    them on LinkedIn.  And I have to admit I did.

20          THE COURT:  So, who did you look up?

21          JUROR:  I think -- I know I looked up you.

22          And I think you didn't have one.

23          THE COURT:  So, Mr. Fiddelman?

24          JUROR:  And I think Mr. Ambrosio.  And I -- that might

25    have been it.  It was the first day.  I don't honestly

1  remember.

2           THE COURT:  And what did you see about Mr. Fiddelman

3  on LinkedIn?

4           JUROR:  University of Pennsylvania -- I think?

5           THE COURT:  I'm not going to let him respond.

6           JUROR:  Okay.  That's what I remember.

7           THE COURT:  Where he went to school?

8           JUROR:  Yeah.

9           THE COURT:  Did you see anything about his cases that

10  he did?

11           JUROR:  No, no.  I looked up nothing about the case,

12  nothing about any cases, nothing about other cases.

13           THE COURT:  Okay.

14           Do you remember seeing anything about Mr. Ambrosio?

15           JUROR:  I don't believe he even had an account, if I

16  recall correctly.

17           THE COURT:  And Ms. Kim, did you look up anything

18  about her?

19           JUROR:  I don't remember.  I don't remember doing it,

20  and I think I probably would remember, but I can't guarantee

21  that I didn't.

22           THE COURT:  And Ms. Ghosh, do you remember?

23           JUROR:  I don't think I did.  I just looked up the

24  names -- I didn't have the paper, so I only remembered -- I

25  think I remembered your name, and your name, and that was it.

OBMKCOL1

1           THE COURT:  Okay.

2           What, if anything, did you share with the other jurors

3  about what you had seen?

4           JUROR:  Nothing, absolutely nothing.

5           THE COURT:  Okay.  Let me ask you to step outside just

6  for one moment.  Thank you for sharing that.

7           JUROR:  Yeah.

8           (Juror not present)

9           THE COURT:  Let me turn to you first, Mr. Ambrosio.

10  Any follow-up questions you want me to ask?

11          MR. AMBROSIO:  I don't think so, your Honor.  For the

12  record, I don't have -- if I have a LinkedIn account, I don't

13  even know how to get on it.  I have not used it -- I may have

14  had one 20 years ago.  I do not use that platform, and if

15  there's anything on there, I don't know what there would be.  I

16  don't think my photo is on it.

17          So, for me, there's nothing that he could have

18  obtained.

19          THE COURT:  And I take it no follow-up questions to

20  ask?

21          MR. AMBROSIO:  No.

22          THE COURT:  Mr. Fiddelman, do you have a LinkedIn

23  account?

24          MR. FIDDELMAN:  I do, your Honor, although the photo

25  is probably from 15 years ago.

OBMKCOL1

1          THE COURT:  And do you have a connection with the

2     University of Pennsylvania?

3          MR. FIDDELMAN:  That's my undergrad institution.  We

4     don't have any follow-up questions.

5          THE COURT:  Okay.

6          MR. AMBROSIO:  Oh, Judge, I do have a follow-up,

7     potential follow-up, question.

8          THE COURT:  For the juror?

9          MR. AMBROSIO:  I'm curious, like, was it just the

10    other jurors felt an obligation to report this?

11         MR. FIDDELMAN:  We would object.

12         THE COURT:  I'm not inclined to ask -- well, let me

13    ask Mr. Fiddelman first what his position is.

14         MR. FIDDELMAN:  We would object to any further

15    questioning about why things were brought to your Honor's

16    attention, because that starts to intrude upon the

17    deliberations.

18         MR. AMBROSIO:  Okay.

19         THE COURT:  Are you okay with that?

20         MR. AMBROSIO:  I'm okay with that, Judge, yes.

21         MR. FIDDELMAN:  I guess in terms of follow-up

22    questions, it's not factual follow-up questions, but we do have

23    a suggestion for how to move forward.

24         THE COURT:  Why don't you make that.

25         MR. FIDDELMAN:  We think that this does fall into the

OBMKCOL1

1    category of potentially minor enough that you can instruct the

2    juror to set anything that he learned aside, and you can ask

3    the juror whether he can fairly and impartially decide the case

4    based solely on the evidence and the law without consideration

5    of anything he saw on LinkedIn.  We think if he answers

6    unequivocally yes, there is no issue, and he can return to the

7    jury and continue deliberating.

8         MR. AMBROSIO:  I don't object to that being a

9    follow-up question, Judge.  And I would agree that if he

10   answers that it wouldn't affect his ability to continue

11   deliberating fairly and impartially, then he could be excused

12   and they resume their deliberations.

13        THE COURT:  Okay.  So what I'm going to do is go

14   through that colloquy with him.  You'll all hear his answers,

15   he'll step out again.  If the answers are as Mr. Fiddelman has

16   said they might be, then -- either way, we'll have him come

17   back in, and one possible resolution is that I will thank him

18   for bringing the information to my attention, and instruct him

19   to return to the jury room, and the jury, once he returns, can

20   continue deliberating.

21        Let's bring him back in.

22        (Juror present)

23        THE COURT:  Let me just ask you a few questions,

24   Mr. Morris.

25        JUROR:  Sure.

OBMKCOL1

| | |
|---|---|
| 1 | THE COURT:  Do you believe that you would be able to, |
| 2 | if you went back into the jury room, set aside, during the |
| 3 | deliberations, anything that you saw about the lawyers? |
| 4 | JUROR:  I do. |
| 5 | THE COURT:  And do you think that you could fairly and |
| 6 | impartially try, decide, this case -- |
| 7 | JUROR:  I do. |
| 8 | THE COURT:  -- render a verdict based solely on the |
| 9 | evidence and my instructions on the law? |
| 10 | JUROR:  I'm very confident in that.  There was nothing |
| 11 | I saw that would have affected it in any way, and I looked up |
| 12 | nothing about the case or anything like that.  So I'm very |
| 13 | confident -- |
| 14 | THE COURT:  So no doubt that I could decide this case |
| 15 | solely on the evidence and my instructions on the law? |
| 16 | JUROR:  Not in the least. |
| 17 | THE COURT:  Okay.  Let me just ask you to step out for |
| 18 | one more moment. |
| 19 | (Jury not present) |
| 20 | THE COURT:  Mr. Ambrosio, any objection to me thanking |
| 21 | him, and then instructing him to return to the jury room, and |
| 22 | that the jury can continue deliberating? |
| 23 | MR. AMBROSIO:  No. |
| 24 | THE COURT:  From the government? |
| 25 | MR. FIDDELMAN:  No objection, your Honor. |

OBMKCOL1

1          THE COURT:  Okay.  Let's have him back in.

2          (Juror present)

3          THE COURT:  Mr. Morris, I apologize for making you

4     come back in and leave.

5          JUROR:  No, this is completely my fault, so I don't

6     mind.

7          THE COURT:  I want to thank you for bringing this to

8     my attention.

9          What I'm going to ask you to do is to return to the

10    jury room and continue your deliberations.  Once all of you are

11    back in the jury room, you can continue your deliberations.

12         JUROR:  Okay, okay.  Thank you.  And, again, I

13    apologize, and --

14         THE COURT:  Thank you for bringing it to our

15    attention.

16         JUROR:  I'm sorry.  Thank you.  I apologize to

17    everybody.

18         (Juror not present)

19         THE COURT:  While we are still here, do you want some

20    time to go through the transcript and figure out what we're

21    going to read back to the jury?

22         MR. FIDDELMAN:  Yes, your Honor.  And we defer to the

23    Court's preference on whether to do readback or just send a

24    written copy of the relevant section back into the jury room.

25    I've had experiences both ways, and I don't think we have a

1    preference.

2               THE COURT:  Do you have a preference, Mr. Ambrosio?

3               MR. AMBROSIO:  I don't, Judge.  I usually defer to the

4    Court if you have -- I don't know what your current practice

5    is.

6               MR. FIDDELMAN:  The testimony could be long because

7    they asked for Harjeet Singh's testimony about the defendant,

8    which is going to go on for quite a while.

9               THE COURT:  Yes.  So, I think if it is long, my

10   inclination would be just to send it back to the jury so that

11   we don't have to all sit through it.

12              If you are all in agreement as to that, and in

13   agreement as to what should go back to the jury, then you'll

14   let my deputy know what should go back to the jury, he'll mark

15   it as an exhibit, and I don't think I need to come back on the

16   bench, but I defer to all of you with respect to that.  If

17   there are disagreements, then I'll resolve them.

18              Any problem with that, Mr. Fiddelman?

19              MR. FIDDELMAN:  No, your Honor.

20              THE COURT:  Mr. Ambrosio?

21              MR. AMBROSIO:  No, your Honor.

22              THE COURT:  Okay.  All right.  Thank you.

23              (Recess pending verdict)

24              THE COURT:  Okay.  We've got a note from the jury.

25   It's Court Exhibit No. 12.  It's timestamped 2:32 p.m.  It's

OBMKCOL2

1    received at 2:34 p.m.  It reads:  "We have reached a verdict."

2            Any reason I should not bring the jury in, from the

3    government's perspective?

4            MR. FIDDELMAN:  No, your Honor.

5            And just for the record, were the transcripts that

6    were sent back Court Exhibits 10 and 11?

7            THE COURT:  Yes, they were.

8            MR. FIDDELMAN:  Thank you.

9            MR. AMBROSIO:  No, no reason, Judge.

10           THE COURT:  Okay.  Let's bring in the jury.

11           (Jury present)

12           THE COURT:  Juror No. 9, you're the foreperson?

13           THE FOREPERSON:  Yes.

14           THE COURT:  Have you reached a verdict?

15           THE FOREPERSON:  We have.

16           THE COURT:  Would you please hand your verdict

17   envelope to my courtroom deputy, Mr. Fishman, for me to

18   inspect.

19           Mr. Fishman, I'm going to hand you the verdict

20   envelope, and I will ask you to hand it to the foreperson, and

21   then to please take the verdict.

22           And let me ask the defendant to please rise and face

23   the jury.

24           Mr. Fishman, would you please now take the verdict.

25           THE DEPUTY CLERK:  Count One, solicitation or

OBMKCOL2

1  acceptance of a bribe by an agent of an organization receiving

2  federal funds, how do you find the defendant, Hector Colon,

3  with respect to Count One, not guilty or guilty?

4          THE FOREPERSON:  Guilty.

5          THE DEPUTY CLERK:  Count Two, extortion under color of

6  official right, how do you find the defendant, Hector Colon,

7  with respect to Count Two, not guilty or guilty?

8          THE FOREPERSON:  Guilty.

9          THE DEPUTY CLERK:  Okay.

10          THE COURT:  Mr. Fishman, you may now collect the

11  verdict form.

12          And, Mr. Colon, you may be seated.

13          Is there a request for a poll?

14          MR. AMBROSIO:  Yes, your Honor.

15          THE COURT:  Mr. Fishman, would you please poll the

16  jury.

17          THE DEPUTY CLERK:  Juror No. 1, is this your verdict?

18          JUROR:  Yes.

19          THE DEPUTY CLERK:  Juror No. 2, is this your verdict?

20          JUROR:  Yes.

21          THE DEPUTY CLERK:  Juror No. 3, is this your verdict?

22          JUROR:  Yes.

23          THE DEPUTY CLERK:  Juror No. 4, is this your verdict?

24          JUROR:  Yes.

25          THE DEPUTY CLERK:  Juror No. 5, is this your verdict?

OBMKCOL2

1          JUROR:  Yes.

2          THE DEPUTY CLERK:  Juror No. 6, is this your verdict?

3          JUROR:  Yes.

4          THE DEPUTY CLERK:  Juror No. 7, is this your verdict?

5          JUROR:  Yes.

6          THE DEPUTY CLERK:  Juror No. 8, is this your verdict?

7          JUROR:  Yes.

8          THE DEPUTY CLERK:  Juror No. 9, is this your verdict?

9          JUROR:  Yes.

10         THE DEPUTY CLERK:  Juror No. 10, is this your verdict?

11         JUROR:  Yes.

12         THE DEPUTY CLERK:  Juror No. 11, is this your verdict?

13         JUROR:  Yes.

14         THE DEPUTY CLERK:  Juror No. 12, is this your verdict?

15         JUROR:  Yes.

16         THE COURT:  Okay.

17         Is there any reason, from the government's

18    perspective, that judgment should not be recorded and filed?

19         MR. FIDDELMAN:  No, your Honor.

20         THE COURT:  Any reason from the defense's perspective?

21         MR. AMBROSIO:  No, your Honor.

22         THE COURT:  Okay.

23         I direct the Clerk of Court to record and file the

24    verdict.

25         Is there any reason, from the government's

OBMKCOL2

```
1    perspective, why the jury should not now be dismissed?
2              MR. FIDDELMAN:  No, your Honor.
3              THE COURT:  From the defense's perspective?
4              MR. AMBROSIO:  No.
5              THE COURT:  Okay.  The jury will be dismissed.
6              Members of the jury, this concludes your duty.
7              A much esteemed judge of this court would never
8    comment on a jury's verdict, nor would he thank the jurors for
9    their service.  It was that judge's view — Judge Weinfeld, a
10   very esteemed member of this bench — not to thank the jury for
11   performing what is their civic duty, one of the highest and
12   most important duties of citizenship.
13             I'm going to follow that practice, in part.  I will
14   not comment on your verdict.  I will note, however, the
15   attention that you each paid to this case, the diligence and
16   care that you exercised, and the sacrifice that many, if not
17   all, of you made in performing your jury duty in this case.
18   For that, I thank you, on the part of our nation.
19             You are now dismissed.  You should leave your notes in
20   the jury room.  My courtroom deputy will ensure that they are
21   destroyed.
22             You're no longer under my injunction not to speak
23   about the case.  You're free to talk about the case or not talk
24   about the case, as you see fit.
25             I would, however, note one thing for you to think
```

OBMKCOL2

1    about:  You might want to think about whether, if you do talk

2    about the case, you should just talk about your own views.  No

3    one signs up for jury duty with the expectation that other

4    jurors will comment upon what he or she said in the jury room.

5    That's not an instruction to you — I'm done giving instructions

6    to you — that's just one thing you should keep in mind.

7    Another way of putting it is the Golden Rule — that you might

8    think about not saying about others what you wouldn't want them

9    to say about you.

10        It may be that people approach you to talk about the

11   case.  Again, you're free to talk about it, or not talk about

12   it, as you see fit.  If any of the parties in this case try to

13   talk to you about the case, you also are free to talk to them

14   or not talk to them, as you see fit.  However, if you do not

15   wish to speak to any of the parties in this case, and that

16   party persists in trying to talk to you, I would tell you to

17   bring it to my courtroom deputy's attention, and we will take

18   care of that.

19        So, with that, and expressing to you again the thanks

20   of our nation, you're now dismissed.

21        We'll all stand for you one last time.  Take your

22   belongings.  Leave your notes in the jury room.

23        All rise.

24        (Jury excused)

25        THE COURT:  Be seated.

OBMKCOL2

1          All right.  Any posttrial motions will be due on the

2     date set by the Federal Rules following the date of the

3     verdict.

4          Is there anything else from the government that we

5     should address today?

6          MR. FIDDELMAN:  Does the Court prefer to set a

7     sentencing date at this time?

8          THE COURT:  I do.

9          So, what I have in mind is March 6, 2025, at

10    11:00 a.m.

11         Does that work for the defense?

12         MR. AMBROSIO:  Give me one second, your Honor.

13         (Pause)

14         MR. AMBROSIO:  March 6th, your Honor?

15         THE COURT:  Yes.

16         MR. AMBROSIO:  Yes, I'm available.

17         THE COURT:  Okay.

18         So, sentencing will be March 6, 2025, at 11:00 a.m.

19         I'm going to direct the government to provide its

20    statement of facts to probation by -- can you do it by

21    December 2nd of 2024?

22         MR. FIDDELMAN:  Yes, your Honor.

23         THE COURT:  Mr. Ambrosio, can you arrange by

24    December 9th to make your client available for an interview by

25    probation?

OBMKCOL2

1          MR. AMBROSIO:  Yes, Judge.  And, for the record, I

2     want to be present.

3          THE COURT:  Okay.  So, I will order, first, that by

4     December 9th you make arrangements to have your client

5     interviewed by probation.

6          I am also going to order that there be no interview of

7     Mr. Colon without counsel being present.

8          Let me advise you, Mr. Colon, that the probation

9     department will want to interview you in connection with the

10     presentence report that it will prepare.  It's very important

11     that you be accurate with them if you decide to speak with

12     them.  The presentence report is something that I will read and

13     pay close attention to at the time of sentencing.

14          I will also advise you that you are going to have the

15     right to review and to comment on the presentence report, and

16     so it's very important that when you get a copy of the

17     presentence report, you review it carefully, and that you go

18     over with counsel any errors in the presentence report or

19     anything else that you believe should be brought to my

20     attention.

21          The parties should consult my individual practices

22     with respect to sentencing submissions.  Those practices

23     provide that defense submissions are due two weeks before

24     sentencing, and the government's submissions are due one week

25     in advance of sentencing.

OBMKCOL2

```
 1                I don't have any page limits in connection with
 2       sentencing, so feel free to bring anything to my attention that
 3       you believe deserves attention.
 4                Is there anything else, from the government's
 5       perspective?  What's the defendant's situation on bail?
 6                MR. FIDDELMAN:  The defendant is currently out on a
 7       personal recognizance bond, with conditions of supervision.
 8       And the government has no objection to continuing those same
 9       conditions pending sentencing.
10                THE COURT:  Okay.  The conditions as set will be
11       maintained.
12                Mr. Colon, let me advise you that the prior conditions
13       of bail that have been set for you continue.
14                Do you understand that?
15                THE DEFENDANT:  Yes, your Honor.
16                THE COURT:  And, sir, you must be in this courtroom on
17       the date and at the time set for sentencing.  If you are not
18       here on that date and at that time, you will be guilty of a
19       separate crime, that of bail-jumping.
20                Do you understand that?
21                THE DEFENDANT:  Yes, I do, your Honor.
22                THE COURT:  Is there anything else from the
23       government's perspective?
24                MR. FIDDELMAN:  No, your Honor.
25                THE COURT:  Mr. Colon, you may be seated.
```

OBMKCOL2

1          Mr. Ambrosio, anything else from your perspective?

2          MR. AMBROSIO:  No.

3          THE COURT:  It was very well tried case.  I think

4     that's it for the day.

5          Have a good afternoon, everybody.  Thank you.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25